IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re Enron Corporation Securities, Derivative & "ERISA Litigation | § § § | MDL-1446 |
| | § | |
| THIS DOCUMENT RELATES TO: | § | |
| G-05-0012 | § | |
| | § | |
| MARK NEWBY, ET AL., | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-01-3624 |
| | § | CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § | |
| | § | |
| Defendants | § | |

| | | |
|---|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, AMERICAN NATIONAL INVESTMENT ACCOUNTS, INC., SM&R INVESTMENTS, INC., AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, STANDARD LIFE AND ACCIDENT INSURANCE COMPANY, FARM FAMILY LIFE INSURANCE COMPANY, FARM FAMILY LIFE INSURANCE COMPANY, FARM FAMILY CASUALTY INSURANCE COMPANY, AND NATIONAL WESTERN LIFE INSURANCE COMPANY, | § § § § § § § § § § § § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. G-05-0012 |
| | § | |
| CREDIT SUISSE FIRST BOSTON, INC., et al., | § § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER OF REMAND**

Pending before the Court in G-05-0012, removed from the 10th Judicial District Court of Galveston County, Texas to the Galveston Division of the United States District Court for the

Southern District of Texas on "related to" bankruptcy jurisdiction under 28 U.S.C. § 1334(b) and § 1452, and then consolidated with *Newby* in this Court, are (1) Certain Defendants'[1] unanswered motion for partially agreed enlargement of time to move, answer or otherwise respond to Plaintiffs' Complaint (instrument #8) and (2) American National Insurance Company, et al.'s[2] opposed motion for remand (#9). Because the latter motion will determine whether the former is moot, the Court addresses the motion for remand first.

Plaintiffs allege violations of the Texas Securities Act, Tex. Rev. Civ. Stat. Ann. art. 581-33, and of Tex. Bus. & Comm. Code Ann, § 27.01 ("Fraud in Real Estate and Stock Transactions"), as amended, and Texas common law fraud (including fraud in the inducement, fraud in the transaction, conspiracy to defraud, aiding and abetting a fraud, and fraudulent concealment)[3] against Defendants "relat[ing] to Defendants' duplicity in the Enron debacle" in concealing Enron's true financial condition in connection with the marketing and sale of Enron securities to Plaintiffs. #9 at 2.

---

[1] "Certain Defendants" are Credit Suisse First Boston, Inc., Credit Suisse First Boston LLC, Credit Suisse First Boston (USA), Pershing LLC, and Deutsche Bank Securities Inc. (f/k/a Deutsche Banc Alex. Brown, Inc.).

[2] Plaintiffs are American National Insurance Company, American National Investment Accounts, Inc., SM&R Investments, Inc., American National Property and Casualty Company, Standard Life and Accident Insurance Company, Farm Family Life Insurance Company, Farm Family Casualty Insurance Company, and National Western Life Insurance Company.

[3] Plaintiffs' Original Petition is attached as Ex. A to Defendants' Notice of Removal (instrument #1).

### Plaintiffs' Motion to Remand

In contrast to the posture of three similar actions previously filed by Plaintiffs, removed to this Court on the same ground, and consolidated with *Newby* (G-02-299, G-02-463, and G-02-723),[4] Plaintiffs' motion to remand argues as the distinguishing factor that a confirmation order approving Enron Corporation's reorganization plan was entered on July 15, 2004.[5]  Plaintiff insists that under both Second and Fifth Circuit law, the entry of a confirmation order ends the bankruptcy court's "related to" jurisdiction over subsequent actions like this one,[6] except for matters that affect implementation or execution of the debtor's confirmed reorganization plan, which Plaintiffs contend is not the situation here.  *In re Craig's Stores of Texas, Inc. v. Bank of Louisiana*, 266 F.3d 388, 390 (5th Cir. 2001), *citing In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993); *In re U.S. Brass*, 301 F.3d 296, 304 (5th Cir. 2002); *In re Sunbrite Cleaners, Inc.*, 284 B.R. 336, 339-40 (N.D.N.Y. 2002).  They maintain that the

_____

[4] Defendants add G-03-967 to this list.
Jurisdiction is determined as of the date the action is removed. *Freeport-McMoRAN, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991); *In re Bissonnet Investments, LLC*, 320 F.3d 520, 525 (5th Cir. 2003); *LeBlanc v. Cleveland*, 248 F.3d 95, 99 (2d Cir. 1999). Therefore, argue Plaintiffs, the other three cases, which were removed prior to entry of the confirmation order, do not determine jurisdiction in this one.

[5] Order Confirming Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code and Related Relief, Ex. A to #9. Paragraph 60 is the provision addressing retention of jurisdiction.
A copy of Enron's full plan of reorganization can be found in H-05-774, #12.

[6] The instant suit was filed on November 30, 2004 and removed on January 7, 2005.

retention-of-jurisdiction provision in the confirmation order, paragraph 60, "reserv[ing] the court's jurisdiction for resolving disputes pertaining to the reorganization plan and as allowed by law," makes clear that Defendants' alleged third-party claims do not fall within the scope of the bankruptcy court's expressly retained jurisdiction.   # 9 at 4-5.[7]   With respect to the statutory authority of 28 U.S.C. § 1334(b), Plaintiffs insist that the traditional *Pacor* test of a conceivable effect upon the bankruptcy estate no longer applies after confirmation of the plan[8]; instead "related to" bankruptcy jurisdiction depends upon whether the outcome of dispute could "in some way significantly affect consummation of the plan as confirmed."   *In re Haws*, 158

---

[7] Noting that the Confirmation Order contains an exhaustive list of the types of proceedings for which the bankruptcy court intends to retain jurisdiction, Plaintiffs highlight ¶ 38(y) and (z) of the Confirmation Order, relating to the permanent injunction entered, which

> (y) . . . shall not extend to or protect members of the Creditors' Committee and their respective properties and interests in property for actions based upon acts outside the scope of service on the Creditors' Committee, and (z) is not intended, nor shall it be construed, to extend to the assertion, the commencement or the prosecution of any claim or cause of action against any present or former member of the Creditors' Committee and their respective properties and interests in property arising from or relating to such members' pre-Petition date acts or omissions . . . .

Paragraph 44 states that the injunction "is not intended to nor should it be construed, . . . to apply to any proceeding not involving property of any Debtor's estate that a non-Debtor Entity brings against another non-Debtor Entity."

[8] *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

B.R. 965, 970 (Bankr. S.D. Tex. 1993).  Post-confirmation "related
to" bankruptcy jurisdiction is restricted to matters pertaining to
implementation or execution of the reorganization plan.  *Craig's
Stores*, 266 F.3d at 390; *In re Johns-Manville*, 7 F.3d at 34.  The
third-party claims the Defendants might assert here would not
affect the implementation of Enron's reorganization plan, no less
significantly affect consummation of the plan, insist Plaintiffs.

Plaintiffs further argue that the Court's denial of
remand in the three earlier suits is inapplicable here because of
the effect of the subsequent confirmation order.

In sum, Plaintiffs contend that because Defendants, who
bear the burden of demonstrating federal subject matter
jurisdiction in a removed case,[9] fail to show that any of
Plaintiffs' claims or any third-party claims that Defendants might
assert in this action could in any way affect the implementation
or execution of Enron's reorganization plan, much less affect
consummation of the plan as confirmed, there is no "related to"
bankruptcy jurisdiction here and the claims are time-barred.
Plaintiffs urge that normally only "core" proceedings, arising
under title 11 or in a case under title 11,[10] are sufficient to
invoke post-confirmation bankruptcy jurisdiction, but Defendants'
purported contribution and indemnity claims, against Enron or even
its former directors and officers' insurance for the benefit of

---

[9] *Kidd v. Southwest Airlines Co.*, 891 F.2d 540, 543 (5th Cir.
1990); *California Public Employees' Retirement System v. WorldCom,
Inc.*, 368 F.3d 86, 100 (2d Cir. 2004), *cert. denied*, 125 S. Ct. 862
(2005).

[10] *In re U.S. Brass*, 301 F.3d at 305.

some or all of the Defendants if Plaintiffs prevail in this suit, do not fall within that category.  Moreover, because Defendants participated in the bankruptcy proceeding, they are bound by the confirmed reorganization plan under principles of *res judicata*.[11] *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987); *Corbett v. MacDonald Moving Services*, 124 F.3d 82, 89 (2d Cir. 1997); *In re V&M Management, Inc.*, 321 F.3d 6 (1st Cir. 2003).[12] The reorganization plan now functions as a contract[13] and even if a particular claim might affect distribution to creditors under that contract, there is no basis for "related to" bankruptcy jurisdiction, and state courts are fully capable of interpreting the plan/contract.[14]  Furthermore, note Plaintiffs, it is well

---

[11] Plaintiffs note that in 2002 the bankruptcy court lifted the automatic stay to allow parties to pursue claims concerning the D&O policies in that court.  Defendants could then have asked Judge Gonzalez to rule on D&O-related issues before entry of the confirmation order.  Now that the confirmation order has been entered, all bankruptcy issues have been resolved, the bankruptcy estate no longer exists, and Defendants are barred from asserting such claims.

[12] Plaintiffs respond to the "implicit" contention that failure to consolidate all Enron-related litigation in this Court will result "in mass confusion and a colossal waste of resources.  They note that several such cases are currently pending in other courts and that the parties in them are voluntarily participating in the *Newby* deposition protocol schedule.  Thus projected confusion and duplication of discovery have not materialized.

[13] *U.S. Brass*, 301 F.3d at 307.

[14] *In re Sunbrite Cleaners*, 284 B.R. at 342 ("'Under the Bankruptcy Code, a confirmed plan of reorganization acts like a contract that is binding on all of the parties, debtor and creditors alike.' . . . because contract interpretation is an issue of state law, . . . the state courts are perfectly well-suited to interpret [a plan].  Moreover, whether a claim has been discharged is a defense that can be raised in post-bankruptcy litigation, whether before a federal district court or a state court.").

established that the mere existence of common facts and circumstances in a bankruptcy proceeding and a separate action does not create "related to" bankruptcy jurisdiction, nor can judicial economy suffice to exercise jurisdiction where the suit is otherwise unrelated to the bankruptcy proceeding. *In re Zale Corp.*, 62 F.3d 746, 753-54 (5th Cir. 1995). They observe that Defendants have failed to cite any statute or constitutional grant of authority to sustain federal subject matter jurisdiction over this state-law suit.

Nevertheless, urge Plaintiffs, if the Court determines that federal subject matter jurisdiction does exist, Plaintiffs request the Court to abstain from exercising it, either under mandatory abstention in the interests of justice pursuant to 28 U.S.C. § 1134(c)(2) or discretionary abstention under 28 U.S.C. § 1334(c)(1) and/or 28 U.S.C. § 1452, especially because entry of the confirmation order, resulting in dissolution of the debtor's estate, weighs heavily in favor of discretionary abstention.

### Defendants' Response

Defendants maintain that this Court has "related to" bankruptcy jurisdiction over this action because their potential contribution claims conceivably could affect the implementation of the thus far unconsummated reorganization plan, by, among other things, increasing Enron's potential liability to Defendants under the claims allowance process and affecting the total amount of assets available for distribution to other creditors under the reorganization plan. If they prevail, Defendants would further seek to recover attorneys' fees, costs, and other expenses

incurred in defending themselves.  Under the express terms of the reorganization plan, the bankruptcy court has retained jurisdiction to adjudicate all creditor claims, pending adversary proceedings, and other issues arising in connection with implementation of the plan.[15]  Defendants insist that the fact that Plaintiffs delayed in filing this action until after issuance of the confirmation order does not divest this Court of "related to" jurisdiction.

Furthermore, Defendants contend that Enron has brought adversary proceedings against numerous entities including Defendants, asserting claims for equitable subordination and disallowance because of Defendants' participation in Enron-related transactions and providing another basis for "related to" bankruptcy jurisdiction.  *Enron Corp. v. Citigroup (In re Enron Corp., et al.*), Adv. Pro. No. 03-09266, No. 01-16034 (AJG)(Bankr. S.D.N.Y., filed Sept. 24, 2003)("MegaClaim Litigation").  Article 38.1(c) of the reorganization plan retains bankruptcy jurisdiction over this MegaClaim Litigation.  Ex. C to #10.  Since the claims in the MegaClaim Litigation function as an objection to

---

[15] Defendants point specifically to Article 38.1(c) of the Plan and to Confirmation Order ¶ 60(c)(retaining jurisdiction "to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtors, the Litigation Trust or the Special Litigation Trust prior to or after the Effective Date"); and to Article 38.1 of the Plan and to Confirmation Order ¶ 60(j)("to hear and determine disputes arising in connection with or relating to . . . implementation, or enforcement of the Plan").  They maintain that Defendants' "potential contribution and indemnity claims against the Enron estate . . . fall squarely within the scope of these jurisdictional provisions."  #11 at 8.

Defendants' claims against the Enron estate, Defendants urge that judicial efficiency would be served by retaining related to bankruptcy jurisdiction over the closely related claims in both actions.[16] In addition, urge Defendants, because Plaintiffs plead "holder" claims, which this Court has held belong to the Debtor's estate, and because under the Enron reorganization plan the claims were distributed as an "asset" for prosecution by the Creditors' Committee, not Plaintiffs, Plaintiffs have no entitlement to these claims, and therefore they would have a conceivable impact upon the implementation and execution of the reorganization plan. Reorganization Plan at arts. 1.34, 28.1, 42.9.

Defendants also charge that Plaintiffs' delay in filing this action, over two years after filing the other three with similar claims against other financial institutions with no explanation for the gap, is "a blatant attempt to evade this Court's jurisdiction," "impermissible forum-shopping," and

---

[16] Nevertheless, as stated by the Fifth Circuit in *Zale*, 62 F.3d at 753,

> Those cases in which courts have upheld "related to" jurisdiction over third-party actions do so because the subject of the third-party dispute is property of the estate, or because the dispute over the asset would have an effect on the estate. Conversely, courts have held that a third-party action does not create "related to" jurisdiction when the asset in question is not property of the estate and the dispute has no effect on the estate. Shared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action "related to" the bankruptcy. Moreover, judicial economy alone cannot justify a court's finding jurisdiction over an otherwise unrelated suit.

"jurisdictional gamesmanship," all of which should not be allowed. Moreover, a remand, which would result in four of Plaintiffs' suits being litigated here and one in state court, "would defeat the goal of judicial economy" in a complex litigation, and "disrupt the coordinated discovery."  #11 at 3.

Defendants point out that whether a claim has a conceivable impact on the implementation and execution of the reorganization is a fact-specific inquiry.  *Hunnicut Co. v. TJX Cos. (In re Ames Dep't Stores, Inc.)*, 190 B.R. 157, 161 (S.D.N.Y. 1995).  Article 38.1(d) of the Enron reorganization plan and ¶ 60(d) of the confirmation order provide for exclusive jurisdiction "to ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished as provided [in the Plan]."  Article 38.1(c) and ¶ 60(c) of the same documents retain bankruptcy jurisdiction "to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtors, the Litigation Trust or the Special Litigation Trust prior to or after the Effective Date."  Finally, Article 38.l(j) and ¶ 60(j) provide for bankruptcy jurisdiction over disputes concerning implementation or enforcement of the Plan. Defendants' potential contribution and indemnity claims against the Enron estate fall within these provisions, they insist.

As the legal basis for their claims, Defendant argue that if Plaintiffs prevail in this suit, Defendants clearly have contribution and indemnity claims against the Enron estate on

several grounds:   (1) as alleged co-tortfeasors with Enron, Defendants have common-law rights of contribution against the Enron estate for its proportionate share of liability; (2) Texas Revised Civil Statutes Annotated Article 581-33(F)(2), of the Texas Securities Act, provides for joint and several liability with the issue for a person who "aids [an] issuer of a security [in a fraud]," and Article 581-33(F)(3) of the same Act provides, "There is contribution as in cases of contract among the several persons so liable"; (3) and the Court has previously ruled that a right to contribution exists under § 32.012 of the Texas Civil Practice and Remedies Code.   Furthermore, Defendants point out that Deutsche Bank Securities Inc. ("DBSI") filed a proof of claim, dated October 2002, with the Enron bankruptcy court, asserting contractual, statutory and common law rights of contribution and indemnification against the Enron estate.[17]   Ex. B to #10.   Therefore if Plaintiffs prevail in this action, DBSI can pursue its claim against the Enron estate.

---

[17] The proof of claim states that it relates to "any contribution, indemnification, reimbursement and/or other obligations arising in favor of the Claimant or any of its affiliates in connection with . . . any . . . litigation or other action, investigation, . . . or proceeding in any way relating to any transaction involving the Claimant and/or any affiliate of the Claimant with the Debtor and/or any affiliate of the Debtor."   Ex. B, Annex A at 1-2, #10.   Regarding other claims the proof of claim further "asserts any and all rights and remedies arising as a matter of law or equity against the Debtor, or pursuant to any . . . contract or other arrangement between the Claimant and the Debtor whether or not such contract or other arrangement is specifically identified herein."   *Id.* at 4.

### Applicable Law

The Court has carefully reviewed the applicable law, the plan, and the confirmation order and concludes for the following reasons that it does not have "related to" jurisdiction over the claims here.

The Court observes that there are substantial differences among the courts regarding the scope of bankruptcy jurisdiction after confirmation. *Collier on Bankruptcy*, ¶ 1142.04, at 1142-6 (Lawrence P. King ed., 15th ed. 2000)("The extent to which the bankruptcy court can or should exercise post-confirmation jurisdiction is an issue that has long troubled the bankruptcy court system.").

A number of courts point out that 28 U.S.C. § 1334(b) has no language restricting subject matter jurisdiction following confirmation; therefore they require only that the post-confirmation claim fall within the broad scope of the bankruptcy court's original "related to" jurisdiction. *See, e.g., U.S. Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999); *In re CF&I Fabricators of Utah, Inc.*, 150 F.3d 1233, 1237 (10th Cir. 1998); *In re Xonics, Inc.*, 813 F.2d 127, 132 (7th Cir. 1987); Harold S. Novikoff and Beth M. Polebaum, *Post-Confirmation Issues: Ascertaining the Effective Date; Post-Confirmation Jurisdiction; Serial Filing; Post Confirmation Litigation Vehicles*, SJ082 ALI-ABA 425, 434-35 (2004).

In contrast, the Fifth Circuit interprets that scope post-confirmation jurisdiction very narrowly. In *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 391 (5th Cir. 2001), the

appellate court rejected post-confirmation use of the "expansive" *Pacor* standard of exercising "related to" bankruptcy jurisdiction if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy"[18] in favor of a more "exacting theory of post-confirmation bankruptcy jurisdiction," because once a plan was confirmed, the debtor had emerged from bankruptcy and there was no estate left to administer. *Id.* at 390 ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.").[19] *See* 11 U.S.C. § 1141(b) (except as otherwise provided in the reorganization plan or confirmation order, "the confirmation of the plan vests all of the property of the estate" in the reorganized debtor and thus the bankruptcy estate no longer exists). In *Craig's Stores*, the Fifth Circuit affirmed the district court's conclusion that the bankruptcy court had no jurisdiction over a post-confirmation,

---

[18] *In re U.S. Brass*, 301 F.3d at 304.

[19] Courts in the Second Circuit follow suit. *See Falise v. American Tobacco Co.*, 241 B.R. 48, 58 (E.D.N.Y. 1999)("The confirmation of the plan in a Chapter 11 reorganization generally terminates the debtor's estate" unless otherwise provided in the plan), *citing Portfolio Lease Funding Corp. v. Seagate Tech., Inc. (In re Atlantic Computer Sys., Inc,)*, 163 B.R. 704 (Bankr. S.D.N.Y. 1994)("confirmation and substantial consummation of the Debtor's Joint Plan means this Debtor's estate no longer exits."). In litigation where the debtor is not a party, a court can still have "related to" bankruptcy jurisdiction as long as the suit has an impact on the bankruptcy estate. *Falise v. American Tobacco Co.*, 241 B.R. 48, 58, *motion to vacate denied*, 241 B.R. 63 (E.D.N.Y. 1999), *appeal dismissed*, 229 F.3d 1135 (2d Cir. 2000). After confirmation and substantial consummation of the plan, so that "there is presently no bankruptcy estate, there can be no continuing jurisdiction over that non-existent estate." *Id.*

state-law based contract dispute because the claims "principally dealt with post-confirmation relations between the parties," there was "no antagonism or claim pending between the parties as of the date of the reorganization," and "no facts or law deriving from the reorganization or the plan were necessary to the claim asserted by Craig's against the Bank."  *Id.* at 391.

In *re U.S. Brass Corp.*, 301 F.3d 296 (5th Cir. 2002), the confirmed plan had expressly provided that certain claims would be resolved in a court of competent jurisdiction. Nevertheless the debtor asked the court to approve an agreement to liquidate those claims through binding arbitration.  The insurers objected that the agreement was an impermissible modification of the confirmed plan.  The Fifth Circuit supplemented its holding in *Craig's Stores* by concluding that there was post-confirmation jurisdiction over the debtor's motion because it not only affected the plan's implementation or execution, but also because the court had bankruptcy jurisdiction where "bankruptcy law will ultimately determine this dispute, and the outcome could affect the parties' post-confirmation rights and responsibilities" and "will certainly impact compliance with or completion of the reorganization plan"; thus the Fifth Circuit concluded that the motion related to the plan's implementation or execution.  *Id.* at 305.

The Second Circuit, whose law this Court has previously held controls on the "related to" bankruptcy jurisdiction issues in this litigation, also recognizes the general rule that after confirmation of the reorganization plan, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for

matters pertaining to the implementation or execution of the plan. *Presidential Gardens Associates v. U.S. ex rel. Sec. of Housing and Urban Development*, 175 F.3d 132, 142 (2d Cir. 1999)("The 'related to' jurisdiction provision in 28 U.S.C. § 1334 does not normally survive the dismissal of the underlying bankruptcy proceedings."). *See also In re Sunbrite Cleaners, Inc.*, 284 B.R. 336, 339 (N.D.N.Y. 2002)("[T]he basic theory of reorganization proceedings is that the debtor . . . has been rehabilitated by the plan so that it can carry on its business.  The corollary of this is that it and its creditors should work out their mutual rights and duties in the ordinary tribunals and should not forever continue under the tutelage of the bankruptcy court.'"), *quoting Butler v. Greater Pythian Temple Ass'n of New York*, 205 F.2d 621, 622 (2d Cir. 1953). *See also Rahl v. Bande*, 316 B.R. 127, 132-33 (S.D.N.Y. 2004)(A proceeding is related to a bankruptcy case when the outcome "'might have any conceivable effect' on the bankrupt estate" or has a "significant connection" with the bankruptcy case; after a plan of reorganization has become effective, bankruptcy jurisdiction exists over a proceeding that is "not independent of the reorganization" and/or has "a significant connection" with it because the resolution of the dispute requires the interpretation of the plan of reorganization and the implementation of that plan."), *citing Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 229 (2d Cir. 2002).

Nevertheless, given the unrestricted language of § 1334(b), for jurisdiction to extend beyond confirmation, the

Second Circuit has highlighted the importance of a plan's jurisdiction-retention provision: "A bankruptcy court retains post-confirmation jurisdiction only to the extent provided in the plan of reorganization." *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993). The Second Circuit is among courts that require such a jurisdiction-retention clause be included in the plan as a prerequisite for a post-confirmation assertion of jurisdiction by the bankruptcy court. *Id.* ("The bankruptcy court's post-confirmation jurisdiction therefore is defined by reference to the Plan. [citations omitted]"); *Falise v. American Tobacco Co.*, 241 B.R. at 58 ("Although jurisdiction is much more restricted after confirmation has occurred, a bankruptcy court can retain jurisdiction as long as the plan or its confirmation provides such continuing jurisdiction . . . . Post-confirmation bankruptcy jurisdiction is defined by reference to the plan of reorganization. [citations omitted]"); *In re Almac's, Inc.*, 202 B.R. 648, 656 (D.R.I. 1996)("[A]lthough parties may not create jurisdiction by provision in a confirmed plan where it does not otherwise exist, many courts find the retention of jurisdiction to be a prerequisite to the adjudication of a post confirmation claim in bankruptcy court.")[20]; Harold S. Novikoff and Beth M. Polebaum, *Post-Confirmation Issues: Ascertaining the Effective Date; Post-Confirmation Jurisdiction; Serial Filing; Post Confirmation*

---

[20] In comparison, the Fifth Circuit has stated that "the source of the court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the court's jurisdiction is 28 U.S.C. § 1334." *In re U.S. Brass Corp.*, 301 F.3d at 303.

*Litigation Vehicles*, SJ082 ALI-ABA 425, 433(2004). A bankruptcy court in the Northern District of New York has held that because the plan language did not allow for broad retention of jurisdiction after confirmation and substantial consummation, the bankruptcy court lacked subject-matter jurisdiction over a post-confirmation motion filed years after confirmation and closure of the bankruptcy case. *In re Sunbrite Cleaners, Inc.*, 284 B.R. 336, 340-41 (N.D.N.Y. 2002). The retention provision need not identify the specific act requested, but the language must be "sufficiently broad to encompass the post-confirmation" act. *Id.* at 341, *citing In re American Preferred Prescription, Inc.*, 255 F.3d 87, 89 (2d Cir. 2001)(finding that although the plan "does not contain a clause explicitly authorizing the court to appoint a trustee," the plan did "set out a broad list of reserved tasks and powers including the power 'to make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof" and thus implies "that the plan's retention of jurisdiction section was sufficiently broad to encompass the post-confirmation appointment of a trustee").

The adversary proceeding does not have to sue the debtor or the debtor's property to meet the requirement to invoke "related to" bankruptcy jurisdiction; there need only be "some nexus between the 'related' civil proceeding and the title 11 case.'" *Rahl v. Bande*, 316 B.R. 127, 133 (S.D.N.Y. 2004), quoting *Lindsey v. O'Brien, Tanksi, Tanzer & Young Health Care Providers (In re Dow Corning Corp.)*, 86 F.3d 482, 489 (6th Cir. 1996)(*quoting*

*Pacor*, 743 F.2d at 994).  "'A civil proceeding is related to a bankruptcy [even] where an action *between non-debtors* would affect how much property is available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could  alter the debtor's rights or liabilities.'"  *Urban Box Office Network, Inc. v. Interfase Managers, LP (In re Urban Box Office Network, Inc.*), No. 01 Civ. 8854 LTS THK, 2003 WL 22971510, *2 (S.D.N.Y. Dec. 18, 2003), *citing Geron v. Schulman (In re Manshul Construction Corp.)*, 225 B.R. 41, 45 (Bankr. S.D.N.Y. 1998)(*citing In re Kolinsky,* 100 B.R. 695, 702 (Bankr. S.D.N.Y. 1989).

In the context of a potential indemnification claim in an adversary proceeding, courts in the Second Circuit, though not requiring a showing of "automatic liability," have required that a party seeking indemnification articulate "a reasonable legal basis for its indemnification claim"; failure to do so would fail to trigger "related to" bankruptcy jurisdiction. *In re Chateaugay Corp.*, 213 B.R. 633, 639-40 (S.D.N.Y. 1997), *citing Hunnicut Co. v. TJX Cos. (In re Ames Dep't Stores, Inc.)*, 190 B.R. 157 (S.D.N.Y. 1995), and *Bond Street Assocs., Ltd. v. Ames Dep't Stores, Inc.*, 174 B.R. 28 (S.D.N.Y. 1994), *adhered to on reconsideration*, 177 B.R. 8 (S.D.N.Y. 1995).

The claims in the instant suit arose before confirmation, indeed pre-petition, although they were not asserted until after confirmation, and they deal with the relations between the parties and a dispute existing before confirmation.  Under the Bankruptcy Code, "confirmation of a reorganization plan discharges

the debtor from any debt that arose before the date of confirmation, regardless of whether proof of the debt is filed, the claims is disallowed, or the plan is accepted by the holder of the claim." *In re Manville Forest Products Corp.*, 209 F.3d 125, 128 (2d Cir. 2000), *citing* 11 U.S.C. § 1141(d)(1). The Second Circuit has defined a "claim" as a "right of payment, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id.* ("under the current code, even contingent and unliquidated debts can constitute claims"*, citing* 11 U.S.C. 1141(d)(1)).

In the instant case the Enron reorganization plan was confirmed approximately a year ago and became effective on November 17, 2004. Thus Enron emerged from bankruptcy. Moreover, it appears to the Court from events publicized regarding the bankruptcy in the media that the plan has been "substantially consummated" under the definition of the Bankruptcy Code, 11 U.S.C. § 1101(2), which defines that term as

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan."

Furthermore, as noted in a recent opinion by United States District Court Judge J. Marrero in *Upstream Energy Services v. Enron Corp. (In re Enron Corp, et al.)*, No. 04Civ.8883VM, 2005 WL 1500875 (S.D.N.Y. June 24, 2005)(holding that an appeal of Enron's

confirmation order had been rendered equitably moot by substantial

consummation of debtor's confirmed chapter 11 plan),

> The Plan in this case has been substantially consummated, as defined in the Bankruptcy Code.  All property proposed by the Plan to be transferred has been transferred and all equity interests in Enron proposed to be cancelled have been cancelled. . . . The reorganized debtor entities have assumed control of substantially all of the property covered by the Plan. . . . Finally, distributions have been made in accordance with the plan, including a $16.1 million distribution to creditors in November 2004 and total distributions of approximately $570 million in February and April of 2005.  In addition to these steps, myriad other complicated and interrelated transactions have gone forward, including the settlement and dismissal of litigation.

*Id.* at *4.

Moreover, as noted, confirmation and substantial consummation mean the bankruptcy estate no longer exists and Plaintiffs' claims cannot have any impact on that estate unless the reorganization plan expressly provides for continuing jurisdiction.  Plaintiffs have relied on (1) Article 38.1(c) of the Plan and Confirmation Order ¶ 60(c)(retaining jurisdiction "to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtors, the Litigation Trust or the Special Litigation Trust prior to or after the Effective Date"); and on (2) Article 38.1 of the Plan and Confirmation Order ¶ 60(j)("to hear and determine disputes arising in connection with or relating to . . . implementation, or enforcement of the Plan").  Defendants

have cited the Court to three provisions:  (1) Article 38.1(d) of the Enron reorganization plan and ¶ 60(d) of the confirmation order providing for exclusive jurisdiction "to ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished as provided [in the Plan]"; (2) Article 38.1(c) and ¶ 60(c) of the same documents retaining bankruptcy jurisdiction "to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtors, the Litigation Trust or the Special Litigation Trust prior to or after the Effective Date"; and (3) Article 38.1(j) and ¶ 60(j) providing for bankruptcy jurisdiction over disputes concerning implementation or enforcement of the Plan.

In *Falise*, 241 B.R. at 59, the Plaintiffs argued that the following provisions in the reorganization plan supported continuing bankruptcy jurisdiction: (1) "To enforce and administer the provisions of the Pan . . . ."; (2) "To determine such other matters as may be provided for in the Confirmation Order . . . ."; (3) "To enforce all orders, judgments, injunctions and rulings entered in connection with the Cases"; and (4) "To enter such orders as may be necessary to appropriate in aid of confirmation and to facilitate implementation of the Plan." They also relied on a provision in the Confirmation Order providing jurisdiction "for such purposes as may be necessary or useful to aid the confirmation and consummation of the Plan and implementation of the Plan as provided in the Plan." *Id.*  The *Falise* bankruptcy

court observed, "To mandate that a plan actually demarcate those areas in which a bankruptcy court could not exercise post-confirmation jurisdiction would create a massive expansion in the jurisdictional grant while conflicting with section 1141(b). Requiring such language would run into severe tension with the constitutional and statutory limits placed on bankruptcy courts." *Id.* Thus although rejecting the need for a plan to provide a particularized listing of matters over which the bankruptcy court could not retain jurisdiction, the bankruptcy court nevertheless found that "Plaintiffs' reliance on this amorphous language [of the above quoted provisions] in the Plan and Confirmation Order as a basis for continuing competence of the bankruptcy court is misplaced.  The language should be read narrowly to ensure that the bankruptcy court's role is appropriately as limited as is practicable after confirmation."  *Id.*  This Court similarly finds the broad, indefinite language in the plan and confirmation order regarding retention of jurisdiction, relied on by Defendants as well as Plaintiffs, is far too general to interpret as extending "related to" bankruptcy jurisdiction to cover potential claims for contribution and indemnification that arise from pre-petition transactions.

Furthermore, as urged by Plaintiffs in their Reply (#13), this Court finds that Defendants have failed to show why their purported contribution and indemnification claims were not "claims" within the definition of the Bankruptcy Code and were not discharged by the confirmation order.  Defendants have relied on cases addressing pre-confirmation claims to assert "related to"

bankruptcy jurisdiction and have not provided authority for their contention that the potential claims could affect the implementation of the reorganization plan, by, among other things, increasing Enron's potential liability to Defendants under the claims allowance process.  Such would be true of nearly any claims alleged post-confirmation if they were not "saved" by clear plan provisions for retention of "related to" bankruptcy jurisdiction following the confirmed plan's discharge of the debtor. Defendants have not met their burden of demonstrating jurisdiction by persuading the Court that their contingent claims, arising prior to confirmation, were not discharged, no less that they would affect the implementation or execution of the confirmed reorganization plan.

Accordingly, this Court concludes that it lacks "related to" bankruptcy subject matter jurisdiction here.

For these reasons, the Court

ORDERS that Plaintiffs' motion for remand (instrument #9) is GRANTED and this case is REMANDED to the 10th Judicial District Court of Galveston County, Texas.  Certain Defendants' unanswered motion for partially agreed enlargement of time to move, answer or otherwise respond to Plaintiffs' Complaint (instrument #8) is MOOT.

**SIGNED** at Houston, Texas, this 25th day of July, 2005.

_____

MELINDA HARMON
UNITED STATES DISTRICT JUDGE